IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WADE NEAL BARKER (03)<br>DOUGLAS SUNG WON (09)<br>MICHAEL BASSEM RIMLAWI (10)<br>DAVID DAESUNG KIM (11)<br>WILLIAM DANIEL NICHOLSON IV (12)<br>SHAWN MARK HENRY (13)<br>MRUGESHKUMAR KUMAR SHAH (14) | CRIMINAL NO. 3:16-CR-516(D) |

GOVERNMENT'S MOTION TO MODIFY
CONDITIONS OF SUPERVISED RELEASE

The government moves under 18 U.S.C. § 3142(c)(3) to modify the above defendants' conditions of pretrial release to require that any out-of-network billing they cause be supported by (1) documentation that the patient's full coinsurance was collected (both for the facility fee and the professional services fee); (2) documentation of a legitimate financial hardship on the part of the patient that precluded collection of coinsurance; or (3) in the event that the physician or facility chooses to waive or reduce the patient's coinsurance, proof that this material fact was disclosed to the patient's insurance carrier before or at the time that the physician/facility billed the insurer for services. The government requests that the defendants submit documentation of the above to the Federal Bureau of Investigation, and, with their consent, to pretrial services, for the duration of their release.

**Motion to Modify Conditions of Release – Page 1**

## BACKGROUND

The indictment here charges that the defendants received millions of dollars in bribes and kickbacks for steering patients with both in and out-of-network insurance benefits to Forest Park Medical Center (FPMC), so the hospital's owners and managers could unjustly enrich themselves through the lucrative out-of-network billing. (Indictment ¶ 49.)  Because out-of-network services can be financially detrimental to patients as a result of substantial coinsurance, FPMC, in an effort to facilitate its bribe and kickback payments, also waived or substantially reduced patients' out-of-network coinsurance, yet concealed this material fact from the patients' plans and programs when submitting bills.  (Indictment ¶¶ 82-89.)  Indeed, patients at FPMC were routinely guaranteed prior to surgery that their total out-of-pocket expenses would be no more than they would be at an in-network facility, despite the fact that FPMC intended to, and did, bill the patients' plans and programs at higher out-of-network rates and were reimbursed accordingly.  (Indictment ¶ 83.)  The defendants were complicit in this practice: they consented to FPMC's unwritten waiver/reduction policy and would communicate it to patients before steering them to FPMC.  (Indictment ¶ 84.)  The charges in the indictment are supported by a myriad of documents, emails, and witness statements secured during the government's investigation.

In light of these and other charges, and the evidence gathered during the investigation, the government previously requested that the Court impose a condition of release restricting the defendants' ability to bill on an out-of-network basis.  In the government's view, this proposed condition was well supported by the allegations in the indictment, consistent with conditions that this district generally imposes in healthcare

**Motion to Modify Conditions of Release – Page 2**

fraud cases, and necessary to protect the public from financial harm. Indeed, several of the defendants—by their own admission—continue to take their patients to out-of-network facilities and others remain out-of-network themselves. While there is nothing unlawful about billing out-of-network, illegal remuneration and the fraudulent waiver or reduction of coinsurance often go hand-in-hand with out-of-network billing. And here, those are the unlawful practices that the defendants are specifically charged with.

Magistrate Judge Horan imposed the no out-of-network billing condition on defendant Won. But the Court backed away from the condition for subsequent defendants after they claimed that it would restrict their ability to practice medicine and ruin them financially.[1] The government now asks the Court to impose a more modest condition of release to protect the public from the potential financial harm caused by the defendants as they await trial.

## ARGUMENT

The government moves to modify the above defendants' conditions of pretrial release by imposing the following additional condition:

> **To the extent that the defendants cause any insurance carrier to be billed on an out-of-network basis for professional services or facility fees during the defendants' pretrial release, they will submit to the Federal Bureau of Investigation and, with their consent, Pretrial Services: (1) documentation demonstrating that the patient's full coinsurance was collected (both for the facility fee and the professional services fee); (2) documentation demonstrating that the patient had a legitimate financial hardship that precluded collection of coinsurance; or (3) in the event that the defendant or facility chooses to waive or reduce the patient's coinsurance, documentation demonstrating that this material fact was disclosed to the patient's insurance carrier before or at the time that the physician/facility billed the insurer for services.**

---

[1] Because Magistrate Judge Horan backed away from this condition, the government, in an effort to treat the defendants equally, did not oppose defendant Won's written request to remove this condition.

**Motion to Modify Conditions of Release – Page 3**

The Court is required to impose the least restrictive combination of conditions necessary to protect the public from the defendants, including any financial harm they might impose.  18 U.S.C. § 3142(c).  The government's proposed condition is both necessary and narrowly tailored.

*First*, the condition is absolutely necessary to protect the public from financial harm.  Here, the Court has already restricted (with minor exceptions), the defendants' ability to bill all federally funded health insurance programs.  In essence, the Court made the determination that, given the charges in the indictment, the risk of fraud and abuse was too great to allow the defendants to continue billing federal programs under *any* circumstances.  Yet, those programs suffered just a fraction of the loss at issue in this case.  Private insurance programs—or, more precisely, the self-funded plans they administer—suffered the bulk of the financial harm charged in the indictment.  But, as it stands, there is *nothing* in the current conditions of release to preclude the defendants from defrauding private insurance companies through out-of-network billing other than their unverifiable word that they will not pay or accept remuneration, and will otherwise follow the law.

This should concern the Court.  Unlike the vast majority of providers, many of the defendants informed the Court at their initial appearances that they do not have contracts with insurance companies and—despite their patients' best financial interests—they continue to take their patients to out-of-network facilities.  Further, the government's investigation has revealed that several of the defendants

**Motion to Modify Conditions of Release – Page 4**

received payments from out-of-network hospitals and surgery centers other than FPMC, and many of those payments were received well after the end of the charged conspiracy. At the very least, 18 U.S.C. § 3142 empowers this Court to require verification that the defendants are billing out-of-network in a lawful manner while on supervised release—at this point, their word is simply not good enough.

It is also important for the Court to understand who the victims are in this case. Contrary to what defense counsel would like the Court to believe, their clients are not charged with defrauding massive insurance companies. Instead, the victims in this case are self-funded plans—school districts, cities, small businesses, trucking companies, and their employees—all of whom contracted with the likes of Cigna, Aetna, and United Healthcare to administer their programs. And those insurers generally paid (and continue to pay) claims through an automated system, relying on the good faith of the provider to submit a true and accurate claim and to disclose all material facts, including any waiver or reduction of coinsurance. To be sure, most insurance plans offer out-of-network benefits in addition to in-network benefits. But there is a built in deterrence to the use of out-of-network benefits in the form of substantial coinsurance owed by the patient. When providers conceal their waiver/reduction of out-of-network coinsurance, they defraud self-funded plans in two different ways. First, they deprive the insurers of information material to their decision regarding whether and how much to pay in reimbursement. *See Blachly v. United States*, 380 F.2d 665, 673 (5th Cir. 1967) ("The deceitful concealment of material facts may also constitute actual

**Motion to Modify Conditions of Release – Page 5**

Case 3:16-cr-00516-D   Document 171   Filed 12/22/16   Page 6 of 10   PageID 489

fraud.")  Second, they cause the submission of false and inflated charges that do not reflect the undisclosed discount provided to the patient.  The end result is the unwarranted payment of reimbursement at substantial out-of-network rates, which depletes the risk pools of self-funded plans, resulting in increased insurance premiums for employees.

*Second*, the proposed condition is the least restrictive possible.  It does not preclude the defendants from billing out-of-network or taking their patients to out-of-network facilities.  Nor does it even require the defendants (or the hospitals where they have privileges) to collect out-of-network patient responsibility.  Instead, it does nothing more than require the defendants to provide proof that they (and the facilities where they are taking their patients) are billing out-of-network in a lawful manner.  FPMC's own *written* "Financial Ethics and Billing" policy from its opening provided that "[w]aiver of co-payments and deductibles by an 'out-of-network' provider may be viewed as a potential kickback, insurance fraud or grounds for disciplinary action against the physician who waives the co-payments, co-insurance or deductible."  The Ethics and Billing policy went on to warn that "[w]e believe that the same exposure exists for the provider who consistently discounts the patient portion of the payment as it does for writing off that portion."  That same policy notes that, in Texas, the Attorney General has taken the view that waiving or reducing coinsurance "may be deemed an unfair trade practice or violate Texas illegal remuneration laws."  It also warned of potential liability for mail or health care fraud under the applicable federal statutes.

**Motion to Modify Conditions of Release – Page 6**

In addition, each of the named victims in the indictment—Cigna, Aetna, United Healthcare, and the Federal Employees Health Benefits program—take the position that a provider's waiver or reduction of patient responsibility payment is a material fact, and that the failure to disclose such practices when the provider submits a bill is a fraudulent omission as well as the submission of a false, fraudulent, and inflated bill.

In short, there is no less restrictive condition than requiring the defendants to verify that they are following the law. In this regard, the proposed condition is nothing more than a targeted mechanism to ensure that the defendants are abiding by the standard condition requiring that they not violate any local, state, or federal law.

In sum, the federal interest in protecting teachers, sanitation workers, and truckers from being defrauded by the defendants is strong and comparable to the federal interest in protecting taxpayers who fund federal health care programs. Absent the requested condition, the insurance companies that act as third party administrators of the victims' plans and programs are virtually powerless to determine whether the defendants' out-of-network billings are legitimate or unlawful. And the requested condition does no more than require the defendants to verify through documentation that they are following the law.

For these reasons, the government respectfully asks the Court to add the proposed condition of release to the conditions presently imposed on defendants Barker, Won, Rimlawi, Kim, Nicholson IV, Henry, and Shah pending trial in this case.

**Motion to Modify Conditions of Release – Page 7**

                Respectfully submitted,

                JOHN R. PARKER
                United States Attorney

                /s/ *Andrew Wirmani*
                Andrew O. Wirmani
                Assistant United States Attorney
                Texas Bar No. 24052287
                1100 Commerce Street, Third Floor
                Dallas, Texas 75242
                Telephone: 214.659.8681
                Facsimile: 214.767.4100

## CERTIFICATE OF SERVICE

On **December 16, 2016**, undersigned counsel conferred with counsel for the listed defendants regarding this motion. Counsel for defendants Kim, Rimlawi, Henry, Barker, Nicholson, and Won indicated that their clients oppose this motion. The government is unaware of who, if anyone, currently represents defendant Shaw.

                /s/ *Andrew Wirmani*
                Andrew O. Wirmani
                Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on **December 22, 2016**, I electronically filed the foregoing document with the Clerk of Court for the United States District Court, Northern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys who have consented in writing to accept this Notice as service of this document.

**Motion to Modify Conditions of Release – Page 8**

/s/ *Andrew Wirmani*
Andrew O. Wirmani
Assistant United States Attorney