IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Criminal No. 3:16-CR-516-D (15) |
| | § | |
| GERALD PETER FOOX, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

The United States of America (the "government") moves pursuant to 18 U.S.C. § 3145(a)(1) to revoke the magistrate judge's order releasing defendant Gerald Peter Foox ("Dr. Foox") on conditions while he awaits trial.  Following *de novo* review of the evidence presented at two detention hearings conducted by the magistrate judge,[1] and for the reasons that follow, the court denies the government's motion and orders that Dr. Foox be released on the conditions contained in this memorandum opinion and order.

I

Dr. Foox is charged by indictment with one count of conspiracy to pay and receive health care bribes and kickbacks, in violation of 18 U.S.C. § 371, and seven counts of

---

[1]"In reviewing a magistrate judge's order of pretrial release, the district court acts *de novo* and makes an independent determination of whether release is proper." *United States v. Arias*, 119 F.3d 2 (5th Cir. 1997) (citing *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992); 18 U.S.C. § 3145(a)(1)).  The court's review of the record developed before the magistrate judge is an appropriate procedure to comply with that obligation. *See, e.g., United States v. Farguson*, 721 F. Supp. 128, 129 n.1 (N.D. Tex. 1989) (Fitzwater, J.).

violations of the Travel Act and aiding and abetting (Commercial Bribery), in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2.  Following his arrest, Dr. Foox appeared before Judge Stickney for an initial appearance and detention hearing.  The government moved for pretrial detention under 18 U.S.C. § 3142(e), contending that there is a serious risk that Dr. Foox will flee and that there are no conditions of release that will reasonably assure his appearance as required.

The government's witness at the first detention hearing was Special Agent Susanna Shaw ("Agent Shaw") of the Federal Bureau of Investigation ("FBI").  Agent Shaw testified that Dr. Foox was a participant in a conspiracy to refer patients for medical procedures from his practice in Tyler, Texas to Forest Park Medical Center; that the indictment was unsealed on December 1, 2016, and FBI agents attempted to arrest Dr. Foox that day; that Dr. Foox was not at his home in Tyler, and the FBI learned that he was in Canada on extended vacation; and that, with the permission of Dr. Foox's attorney, Mike Snipes ("Snipes"), Agent Shaw telephoned Dr. Foox's cell phone and informed him of the indictment.  Agent Shaw also testified that she arranged for Dr. Foox to drive to the Canada-United States border and self-surrender the following morning.  Dr. Foox was to call Agent Shaw when he was one hour away from the border, and she would coordinate with the FBI in Buffalo, New York to complete the surrender.  Agent Shaw testified that Dr. Foox agreed to this arrangement and did not indicate any confusion or prior travel plans that would interfere with his surrendering.

- 2 -

Dr. Foox did not call Agent Shaw the next morning.  Instead, he boarded a flight to Panama with his wife Carol Foox ("Carol").  The Fooxes had a pre-scheduled vacation to the Galapagos Islands in Ecuador via Panama, departing later that week, but they decided to advance their plans and depart before Dr. Foox was scheduled to surrender to the FBI.  The FBI received a travel alert that Dr. Foox was en route to Panama, and it coordinated with the FBI in Panama and Panamanian immigration officials to detain Dr. Foox upon arrival.  Dr. Foox, a dual citizen of the United States and South Africa, was traveling under his South African passport.  Panamanian immigration officials deported Dr. Foox and put him on the first flight back to the United States.  He was arrested on his arrival at Washington Dulles International Airport in Virginia.

Agent Shaw also testified that, before Dr. Foox was arrested, he transferred substantial assets to accounts at Canadian Imperial Bank ("CIB").  This court issued an order freezing the Canadian accounts, but Agent Shaw testified that, by the time she served the order on CIB, over $8 million dollars had been withdrawn.  Agent Shaw testified that the funds were withdrawn in the form of a bank check or bank draft, and the money later reappeared in Dr. Foox's CIB account.

Dr. Foox presented five witnesses at the first detention hearing, including four who testified that they might be willing to serve as third-party custodians should the court release Dr. Foox.  Snipes testified that he counseled Dr. Foox to turn himself in and had informed him of the consequences of fleeing; that Dr. Foox had no previous interaction with law enforcement and had no idea that he would be indicted; that these factors led Dr. Foox to

panic and make the wrong decision to go to Panama; and that Snipes might be willing to serve as a third-party custodian in the Dallas area.

Three witnesses, Perry Marshall, Patricia Mezayek, and David Mark Carpenter, testified concerning Dr. Foox's character and honesty.  Marshall also testified that Carol was undergoing treatment for breast cancer and that she is the "center of that man's life."  Dec. 27 Hrg. Tr. 44.  Each would consider serving as a third-party custodian for Dr. Foox.

Bridget Schriefer ("Schriefer"), Dr. Foox's private banker at JP Morgan Chase ("JP Morgan") in Tyler, testified that Dr. Foox regularly moved large sums of money in search of the best rate; that before Thanksgiving, Dr. Foox expressed the desire to transfer approximately $2.5 million from JP Morgan to a Canadian bank that offered a better rate; and that this was not an unusual transaction for Dr. Foox.  Counsel for Dr. Foox represented to Judge Stickney that Dr. Foox has approximately $15 million in liquid assets in Canada and approximately $2 million in Texas accounts and instruments.[2]

Judge Stickney found that the government had shown by a preponderance of the evidence that Dr. Foox is a flight risk, and that he could not find any condition or combination of conditions that would reasonably assure Dr. Foox's appearance as required.

Dr. Foox filed a motion for reconsideration, submitting new evidence and arguing that the court could release him on conditions that would assure his appearance.  He maintained that, due to his age (70) and multiple degenerative conditions, he would be better treated on

---

[2]The government contends that it has reasons to doubt Dr. Foox's financial disclosures, but it did not submit evidence showing that the disclosures might be false.

release, and he submitted bank records showing that he never withdrew the $8 million bank check, as Agent Shaw had contended.  The government opposed the motion.

Following a second hearing, Judge Stickney found that requiring Dr. Foox to deposit the sum of $13 million, among other conditions, would create a disincentive to flight and would be reasonably likely to ensure Dr. Foox's appearance.  Judge Stickney ordered that Dr. Foox be released while awaiting trial on the standard conditions imposed in this district and on the following pertinent additional conditions: (1) Dr. Foox must submit to supervision by and report for supervision to Pretrial Services; (2) he must surrender any passport to the Clerk of Court; (3) he must avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution; (4) he may not possess a firearm, destructive device, or other weapon; (5) he is restricted to 24-hour-a-day lock-down at his residence except for medical necessities, court appearances, other activities specifically approved by the court, attendance at religious service, and travel to meet with counsel in Dallas; and (6) he must deposit $13 million or certificates of deposit into the court registry.

Judge Stickney stayed Dr. Foox's release so that the government could seek review of the order setting conditions of release.  The government filed an emergency motion to stay and revoke magistrate judge's order of release.  This court granted a stay pending a ruling on the government's motion.

II

A

An individual shall be released pending trial unless a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

> The court applies a preponderance of the evidence standard in deciding whether [Dr. Foox] is a flight risk. The court can detain [Dr. Foox] on the basis that he is a flight risk, without considering whether he would be a risk to the community if released. *See United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985) ("[T]he lack of reasonable assurance of either the defendant's appearance or the safety of others or the community is sufficient [to detain a defendant without bond]; both are not required.").

*United States v. Simpson*, 2009 U.S. Dist. LEXIS 129667, at *4 n.5 (N.D. Tex. Nov. 12, 2009) (Fitzwater, C.J.), *aff'd*, 360 Fed. Appx. 537 (5th Cir. 2010).

Section 3142(g) details the factors that the court must consider when determining whether there is a condition or combination of conditions that will reasonably assure Dr. Foox's appearance:[3]

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person; [and]
> (3) the history and characteristics of the person, including—

---

[3]The government does not contend that Dr. Foox poses any danger to the safety of any other person or the community.

- 6 -

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law[.]

B

Following *de novo* review of the two detention hearings, and having considered the statutory factors under § 3142(g)(1)-(3), the court finds that the government has failed to establish by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Dr. Foox's appearance as required. The court finds instead that, although Dr. Foox fled when he was first notified that he had been indicted, the following combination of conditions will reasonably assure Dr. Foox's appearance as required. These conditions are in addition to the ones contained in Judge Stickney's January 20, 2017 order setting conditions of release.

1.      Dr. Foox must deposit into the court registry the sum of $15 million, to be forfeited if he does not appear as required.[4]

2.      Dr. Foox must post a corporate surety bond in the sum of $200,000.

---

[4]This sum is in lieu of the $13 million sum required by Judge Stickney, not in addition to that sum.

3.     Within seven calendar days of his release from pretrial detention, Dr. Foox must begin residing with a third-party custodian, approved by Judge Stickney, at a dwelling located within the Dallas Division of the Northern District of Texas.[5]

4.     Dr. Foox must submit to location monitoring (GPS) as directed by the Pretrial Services officer or supervising officer and comply with all of the program requirements and instructions provided.  He must pay the cost of the program, as determined by the Pretrial Services officer or supervising officer.

III

The court directs that, prior to Dr. Foox's release from pretrial detention, he appear before Judge Stickney and sign an order setting conditions of release that includes the conditions contained in Judge Stickney's January 20, 2017 order (unless modified by this memorandum opinion and order) and the additional conditions contained in this memorandum opinion and order.  Upon his compliance with all conditions that take effect prior to release (e.g., the depositing of $15 million in the court registry and the posting of a corporate surety bond), he is to be released pending trial under the order setting conditions

---

[5]Dr. Foox is not required to sell or otherwise relinquish his residence in Tyler, but he is not permitted to reside there.

of release that he signs before Judge Stickney during that court appearance.

**SO ORDERED**.

January 27, 2017.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE