IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 3:16-CR-00516-JJZ |
| ANDREW JONATHAN HILLMAN (19) | |

# FACTUAL RESUME

SUPERSEDING INDICTMENT: Count 1: 18 U.S.C. § 371, Conspiracy to Pay and Receive Health Care Bribes and Kickbacks.

ELEMENTS OF THE OFFENSE: In order to establish the crime of Conspiracy to Pay and Receive Health Care Bribes and Kickbacks, in violation of 18 U.S.C. § 371, as set out in Count 1 of the superseding indictment, the Government must prove the following elements beyond a reasonable doubt:

*First*: That the defendant and at least one other person made an agreement to commit the crime of paying and receiving health care bribes and kickbacks, as charged in the superseding indictment;

*Second*: That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and

*Third*: That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.

STIPULATED FACTS:

Hillman agrees that the following facts are true and correct and that his testimony

at any trial would reflect the same.

From in or around early 2008, through in or about January 2013, in the Dallas Division of the Northern District of Texas and elsewhere, Hillman and others did knowingly and willfully combine, conspire, confederate, and agree with each other to commit certain offenses against the United States, that is:

a. to violate 42 U.S.C. § 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, specifically, bribes and kickbacks, directly and indirectly, overtly and covertly, to induce the recipients to refer individuals to Forest Park Medical Center (FPMC) and to physicians who performed medical procedures at the hospital for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part under a Federal health care program, namely, FECA and TRICARE;

b. to violate 42 U.S.C. § 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, specifically, bribes and kickbacks, directly and indirectly, overtly and covertly, in return for referring individuals to FPMC and to physicians who performed medical procedures at the hospital for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part under a Federal health care program, namely, FECA and TRICARE;

c. to violate 42 U.S.C. § 1320a-7b(b)(1), by knowingly and willfully soliciting remuneration, specifically, bribes and kickbacks, directly and indirectly, overtly and covertly, in return for referring individuals to non-FPMC facilities for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part under a Federal health care program, namely, Medicare and Medicaid; and

d. to violate 18 U.S.C. § 1952 by using and causing to be used facilities in interstate commerce with the intent to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of unlawful activity, specifically, Commercial Bribery in violation of Texas Penal Code § 32.43, and thereafter, to perform and attempt to perform acts to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of such unlawful activity.

Hillman, at all relevant times, understood the unlawful purpose of this agreement and joined in it with the intent to further its unlawful purpose.

Hillman and his codefendant, Semyon Narosov, owned and operated Hospital Business Concepts (HBC). HBC enticed surgeons to use certain hospitals by offering them patients, kickbacks, or other incentives. The hospitals would then pay Hillman and Narosov a kickback for each patient that the surgeon brought to the hospital for surgery.

Hillman and Narosov met coconspirator Alan Beauchamp in approximately 2008 when Beauchamp was running Vista Hospital. Hillman and Narosov brokered surgeons for Vista and, in exchange, Beauchamp paid them a kickback equal to 10% of anticipated collections on each surgery that a "HBC surgeon" performed at the hospital. Beauchamp kept tabs on which surgeons Hillman and Narosov brought to Vista and tracked the surgeons' surgeries so Hillman and Narosov could be paid their 10% kickback.

When Forest Park Medical Center (FPMC) was formed, Beauchamp eventually brought the relationship with Hillman and Narosov to the new hospital and had the same 10% deal. FPMC funneled money through Adelaide Business Solutions, after which Adelaide paid Hillman and Narosov a 10% kickback for the surgeries performed at FPMC by the surgeons that HBC recruited. Coconspirator Andrea Smith kept a list of "HBC surgeons" and tracked each surgery that the surgeons performed at FPMC.

FPMC was an out-of-network hospital. Accordingly, Hillman and Narosov were

paid not only for surgical patients but also to assist in steering those patients toward their out-of-network benefits, which was financially detrimental to the patients. To induce patients to use FPMC, HBC would tout FPMC's unwritten and fraudulent policy of waiving out-of-network coinsurance or guaranteeing that it would be reduced to in-network levels.

During the conspiracy, Hillman and Narosov received two kickback checks from FPMC/Adelaide, a July 2010 check for $150,000 and a September 2010 check for $40,000. Hillman and Narosov submitted phony invoices to FPMC/Adelaide for things such as "Parts and Labor" and "Creative Creation" to conceal the illegal purpose of the kickback payments. In return for the payments, Hillman and Narosov received credit from FPMC for 80 surgeries performed by HBC surgeons which resulted in FPMC billing patient's insurance companies, including the Department of Labor, over $6 million and receiving payments in excess of $1.5 million. Hillman agrees and stipulates that the loss to insurance companies, and the self-funded programs they administered, from steering patients with in-network benefits to FPMC, an out-of-network facility, via kickbacks and the waiver of coinsurance, is $537,855.82. Beauchamp eventually cut off Hillman's and Narosov's bribe and kickback payments due to a dearth of patient referrals.

At some point, Hillman and Narosov became associated with Victory and Innova Hospitals. Hillman and Narosov, aided and abetted by others, paid kickbacks to codefendants Douglas Won, Michael Rimlawi, and William Nicholson, in exchange for

their performing surgeries at Victory and Innova Hospitals.

This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support Hillman's guilty plea to Count One of the superseding indictment.

AGREED TO AND SIGNED on this 17th day of Sept. 2018.

ERIN NEALY COX
UNITED STATES ATTORNEY

______________________
ANDREW O. WIRMANI
Assistant United States Attorney

______________________
ANDREW JONATHAN HILLMAN
Defendant

______________________
BRIAN POE
Attorney for Defendant